JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant Iran Doss (appellant) appeals his rape and kidnapping convictions. After reviewing the facts of the case and pertinent law, we affirm in part and vacate in part.
 I. {¶ 2} On the night of December 31, 2004, 23-year-old J.P. celebrated New Year's Eve with friends at Club Moda near downtown Cleveland. It is undisputed that J.P. consumed alcohol during the course of the evening. J.P. remembers being on the dance floor shortly after midnight, when what she describes as a "black curtain" came down over her. J.P. does not recall what happened from that time until approximately 8:00 a.m. the next morning, when a woman she did not know shook her awake. J.P. was in a strange bed, and she was not wearing her own clothing. She was also nauseous, disoriented, and bruised.
 {¶ 3} J.P. noticed a man in the room, who she later identified as appellant. The man and woman told J.P. to clean herself up, then drove her home. During the drive, the woman told J.P. that she and appellant had found her intoxicated at the bar, that J.P. did not know her own name or where her friends were, and that they had taken J.P. home with them to be good Samaritans. The woman also mentioned a man named Tyson, whom J.P. did not know. The woman gave J.P. a napkin with the name Eileen and a telephone number on it. According to J.P., appellant did not say anything to her. *Page 4 
 {¶ 4} After she was dropped off, J.P. continuously vomited, and when she urinated, she experienced pain in her vaginal area. J.P. called a friend, who took her to the hospital. J.P. was given a rape kit and the police arrived to question her. No drugs were found in her system, and DNA tests later revealed that semen found on J.P.'s underwear belonged to Tyson Simpkins (Simpkins), a bouncer at Club Moda who was working that night. Simpkins pled guilty to abduction and sexual battery in a related case.
 {¶ 5} Using the napkin given to J.P. with a name and number on it, the Bedford Police subsequently located Eileen Wiles (Wiles) and her boyfriend, appellant, both of whom J.P. identified from photographs as the man and woman in whose apartment she awoke and who drove her home.
 {¶ 6} On January 20, 2005, appellant gave a written statement to the police regarding the incident. In the statement, appellant recalled that as he and Wiles were getting ready to leave Club Moda around 2:00 a.m., they noticed that J.P. was there, apparently drunk and without a ride home. He and Wiles decided to take J.P. to their place to sleep and then drive her home later that morning. Appellant alleges in his statement that he and J.P. had sexual intercourse. Additionally, when asked whether appellant thought J.P. seemed intoxicated, he said, "Yes, she was hugging me and she didn't know me and she said she loved me." When asked if anyone else said J.P. was intoxicated, appellant replied, "Yes, the bartender and the *Page 5 
bouncer." Finally, the following question and answer are found in appellant's written statement: "Q: Before you left your bedroom with this girl what did you say to her? A: After we were fondling each other I said do you want to go in the living room and she said yes."
 {¶ 7} On April 22, 2005, appellant was indicted for two counts of rape in violation of R.C. 2907.02(A)(1)(c) and one count of kidnapping with a sexual motivation in violation of R.C. 2905.01(A)(2) and (4) and2941.147. On March 27, 2006, a jury found appellant guilty of one count of rape and one count of kidnapping. On June 5, 2006, the court labeled appellant a sexually oriented offender, sentenced him to four years in prison, and ordered appellant to pay restitution and a fine.
 II. {¶ 8} In his first assignment of error, appellant argues that he "was denied due process of law when the court admitted defendant's statement without independent proof of the corpus delecti of the crime." Specifically, appellant argues that it was error for the court to admit his January 20, 2005 written statement to the police, which appellant argues is a confession, without first requiring the state to offer "some corroborating circumstances tending to prove criminal agency * * *."State v. Maranda (1916), 94 Ohio St. 364, 370. *Page 6 
 {¶ 9} The pertinent parts of appellant's statement read as follows: "We had sex for about five minutes, then she pulled me to the floor, and we had sex there, for about 10 more minutes. After we were done, I was getting up, and she pushed my head down, towards her vagina, and I started to give her oral sex, for about one to two minutes. After that, we both put our PJ's on, and went back to bed."
 {¶ 10} Appellant was convicted of violating R.C. 2907.02(A)(1)(c), which defines rape as "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition * * * and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired * * *." Additionally, appellant was convicted of violating R.C. 2905.01(A)(2) and (4), which defines kidnapping as "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony * * *; [or] [t]o engage in sexual activity * * *."
 {¶ 11} A careful reading of appellant's written statement to the police shows that he did not confess to raping or kidnapping J.P. On the contrary, appellant maintains throughout his statement that, although J.P. was intoxicated, she agreed to go back to appellant's apartment to sleep until she could be taken home in the morning, and he and J.P. had consensual sex that night. This position is not *Page 7 
consistent with the statutory definitions for rape or kidnapping, and we decline to see appellant's statement as a confession. Given this, the corpus delecti rule requiring extraneous evidence to support a confession does not apply to the case at hand. See State v. Netters
(Sept. 30, 1982), Cuyahoga App. No. 44352 (holding that the defendant's "statement was not a `confession' in the true sense of the word. [Defendant] merely explained the origin of the rifle and acknowledged ownership but did not admit his guilt of unlawful possession of a dangerous ordnance or possession of criminal tools").
 {¶ 12} Accordingly, the court did not err in admitting appellant's statement, and his first assignment of error is overruled.
 III. {¶ 13} In his second assignment of error, appellant argues that he "was denied due process of law when the court failed to define the term substantially impaired." Specifically, appellant argues the court was required to define "substantially impaired" in its instructions to the jury, pursuant to R.C. 2945.11, which reads: "In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict."
 {¶ 14} In State v. Zeh (1987), 31 Ohio St.3d 99, 103, the Ohio Supreme Court held that because the phrase "substantially impaired" is not defined in the Ohio Criminal Code, it "must be given the meaning generally understood in common *Page 8 
usage." The Zeh court also held that it is sufficient for the state to establish substantial impairment by offering evidence at trial showing a reduction or decrease in the victim's ability to act or think. Id. at 103-104.
 {¶ 15} In the instant case, J.P. testified that she was intoxicated, she blacked out sometime after midnight, and did not remember anything until she woke up the next morning. The doctor that subsequently examined J.P. testified that, in his professional medical opinion, J.P.'s symptoms were consistent with someone who was inebriated, and that when one is inebriated, his or her ability to make typical judgments is decreased. Additionally, Kristen Collins, a bartender at Club Moda who was working that night, testified as follows about J.P.'s condition as she was leaving the club: "She didn't really know what was going on, and she just really didn't — she looked really out of it. * * * [S]he seemed like she was going to go to sleep, because she kept leaning over, and slumping. * * * Slumping, like she was sitting on the bench but she was just like — kind of, like slumping, not sitting up straight. Not really aware, to, looked very drunk."
 {¶ 16} We hold that this testimony is sufficient to establish J.P.'s substantial impairment, within the common meaning of that phrase. Accordingly, the jury had the information necessary to determine whether J.P. was, in fact, substantially impaired, and the court did not err by failing to expressly define the phrase. Appellant's second assignment of error is without merit. *Page 9 
 IV. {¶ 17} In his third assignment of error, appellant argues that he "was denied due process of law when voluntary intoxication was raised to an element of mental or physical condition that deprived one of the ability to consent." Although unclear from his brief, it seems as if appellant argues that the state's theory of voluntary intoxication as a substantially impaired mental condition under R.C. 2907.02(A)(1)(c) is unconstitutional. We disagree.
 {¶ 18} In In re King, Cuyahoga App. Nos. 79830 and 79755, 2002-Ohio-2313, we followed the Twelfth District Court of Appeals of Ohio's holding in State v. Martin (Aug. 12, 2000), Brown App. No. CA99-09-026 :
 "[Voluntary intoxication is included in the term `mental or physical condition' as used in R.C. 2907.02(A)(1)(c). A person who engages in * * * sexual conduct * * * when the victim's ability to resist or consent is substantially impaired by reason of voluntary intoxication is culpable for rape. * * * A person's conduct becomes criminal under this section only when engaging in sexual conduct with an intoxicated victim when the individual knows or has reasonable cause to believe that the victim's ability to resist or consent is substantially impaired because of voluntary intoxication." (Emphasis in original.)
 {¶ 19} Appellant fails to show how he was denied due process of law regarding evidence of J.P.'s voluntary intoxication, and in line withIn re King and Martin, we hold that this evidence may be properly used to show substantial impairment under R.C. 2907.02(A)(1)(c). Appellant's third assignment of error is overruled.
 V. *Page 10 {¶ 20} In his fourth assignment of error, appellant argues that he "was denied due process of law when the court overruled his motion for judgment of acquittal." Specifically, appellant argues that there was insufficient evidence to convict him of rape.
 {¶ 21} When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259. The elements of R.C.2907.02(A)(1)(c), which have been thoroughly discussed in assignments of errors one and three, require that the state prove appellant had sexual conduct with J.P. while J.P. was substantially impaired, and appellant knew, or had reason to believe, that she was substantially impaired. Furthermore, R.C. 2901.22(B) defines "knowledge" as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 22} In the instant case, in appellant's written statement to the police he admits to having sex with J.P., and he states that J.P. was intoxicated. In addition, the bartender, the examining doctor, and J.P. herself testified that J.P. was intoxicated on the night in question. The bartender's testimony that J.P. "didn't *Page 11 
really know what was going on," coupled with J.P.'s testimony that she blacked out and has no memory of the incident, amount to sufficient evidence of a violation of R.C. 2907.02(A)(1)(c). Compare with State v.Schmidt, Cuyahoga App. No. 88772, 2007-Ohio-4439 (holding that "[a]ssuming, without deciding, that there was sufficient evidence of substantial impairment * * *, the evidence is lacking as a matter of law on the element of defendant's knowledge of such impairment. * * * There is nothing in this record that would enable a trier of fact to reasonably conclude that defendant was aware that [the victim] was substantially impaired to the point that it affected her ability to control * * * her conduct").
 {¶ 23} A rational trier of fact could have found the essential elements of substantially impaired rape proven beyond a reasonable doubt, and appellant's fourth assignment of error is overruled.
 VI. {¶ 24} In his fifth assignment of error, appellant argues that he "was denied due process of law when the court failed to merge the rape and kidnapping convictions." Putting this assignment of error aside, we sua sponte address the sufficiency of the evidence presented to convict appellant of kidnapping. See Crim.R. 52(B). When reviewing sufficiency of the evidence, an appellate court must determine "[w]hether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the *Page 12 
crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259. Appellant was convicted of violating R.C. 2905.01(A)(2) and (4), which define kidnapping as "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony * * *; [or] [t]o engage in sexual activity * * * with the victim against the victim's will * * *."
 {¶ 25} In the instant case, no evidence was presented showing force, threat, deception or the restraint of liberty. Pursuant to R.C.2901.01(A)(1), "`Force' means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." Appellant's statement maintained that the ride home, as well as the sex, was consensual. J.P. testified that she did not remember anything from midnight until 8:00 a.m. the next morning. Various people testified that J.P. was intoxicated, but nobody testified that she went with appellant against her will, or that appellant restrained her in any way. Accordingly, we hold that there was insufficient evidence to convict appellant of kidnapping. See State v. Nieland, Greene App. No. 2005-CA-15, 2006-Ohio-784 (holding that there was no evidence that the victim was restrained in any way, therefore, there was insufficient evidence to support a kidnapping conviction).
 {¶ 26} Appellant's kidnapping conviction is vacated, thus rendering his fifth assignment of error moot. *Page 13 
 VII. {¶ 27} In his sixth assignment of error, appellant argues that he "was denied due process of law when the court ordered restitution along with a fine." Specifically, appellant argues that the court erred when it ordered appellant as follows: "pay restitution in the amount of $1,034.94 for medical expenses incurred by [J.P.] and $80 in missing cash. I'm going to fine you $1,000 in each crime of rape and kidnapping and you will pay your court costs."
 {¶ 28} Pursuant to R.C. 2929.18(A)(1), the court may order a felony offender to pay restitution to the victim "in an amount based on the victim's economic loss." The statute further reads that "the court shall determine the amount of restitution to be made by the offender" and a restitution hearing is required only if a party disputes the amount. In addition, R.C. 2929.18(A)(2) states that the court may also order the offender to pay a fine, with "the amount of the fine based on a standard percentage of the offender's daily income over a period of time determined by the court and based on the seriousness of the offense."
 {¶ 29} In the instant case, appellant argues that the court arbitrarily picked a figure for restitution. However, the facts of the case show otherwise. J.P. testified that she had $80 in her purse that evening that was missing the next morning, thus supporting the court ordering appellant to pay her $80. Furthermore, in R.C. 2929.01(M), "economic loss" includes medical costs as a result of the commission of *Page 14 
the offense, thus allowing the court to order appellant to pay $1,034.94 in medical bills. We hold that the court's restitution order was anything but arbitrary, and because appellant did not dispute the amount during sentencing, the court was not required to hold a hearing.
 {¶ 30} As for the court ordering appellant to pay fines, he argues that he does not have any money and was found indigent, therefore, it was "improper and unconstitutional" to impose the fines. We disagree. "A determination that a criminal defendant is indigent for purposes of receiving appointed counsel does not prohibit the trial court from imposing a financial sanction pursuant to R.C. 2929.18." State v.Kelly (2001), 145 Ohio App.3d 277, 283. In addition, we held the following in State v. Powell (1992),78 Ohio App.3d 784, 789-90:
 "Many criminal defendants, even those who have steady income, are not able to raise sufficient funds to pay the retainer fee required by private counsel before counsel will make an initial appearance. This difference is even more evident in cases where the defendant has to utilize his financial resources to raise sufficient bond money in order to be released from jail. In contrast, the payment of a mandatory fine over a period of time is not equivalent to the immediate need for legal representation at the initiation of criminal proceedings."
 {¶ 31} As such, appellant's sixth assignment of error is overruled.
 VIII. {¶ 32} In his final assignment of error, appellant argues that he "was denied effective assistance of counsel." Specifically, appellant argues that his counsel was ineffective in the following three ways: 1) failing to request a definition of "substantially impaired"; 2) *Page 15 
failing to file a motion to suppress; and 3) "counsel objected to the court's giving of an instruction on the lesser offense of sexual battery."
 {¶ 33} In order to substantiate a claim of ineffective assistance of counsel, an appellant must demonstrate that 1) the performance of defense counsel was seriously flawed and deficient, and 2) the result of appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v.Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. In State v. Bradley, the Ohio Supreme Court truncated this standard, holding that reviewing courts need not examine counsel's performance if appellant fails to prove the second prong of prejudicial effect. State v. Bradley (1989), 42 Ohio St.3d 136. "The object of an ineffectiveness claim is not to grade counsel's performance." Id. at 142.
 {¶ 34} First, appellant argues his counsel was ineffective in failing to request a definition of "substantially impaired." After a thorough analysis of this issue in appellant's second assignment of error, we concluded that the court was not required to define the phrase; therefore, defense counsel's performance was not flawed or deficient on this issue.
 {¶ 35} Appellant's second argument regarding ineffective assistance of counsel concerns the failure to file a motion to suppress. However, it is unclear from appellant's brief what exactly he would have the court suppress and why. Appellant *Page 16 
alleges that he "was arrested without a warrant at his home and taken to the Bedford police station. At the police station he gave a statement without any warning although in custody. After executing a search warrant at defendant's home, defendant was taken to the Bedford police station. In addition various items were seized which were used as exhibits at trial. While Det. Shawn Klubnik testified defendant was not under arrest he was under arrest and taken by the police to the police station."
 {¶ 36} We assume arguendo that appellant asserts his written statement to the police should have been the subject of a motion to suppress, because there was an illegal arrest. However, appellant does not identify any facts in the record to support his argument. On the contrary, a review of appellant's written statement shows both his initials and his signature expressly waiving his Miranda rights and identifying his actions as voluntary. Nothing in the record, or in appellant's arguments to this court, contradicts this position. SeeState v. Lather, 110 Ohio St.3d 270, 2006-Ohio-4477 (holding that a court's determination of a Miranda waiver is "viewed in light of all the surrounding circumstances").
 {¶ 37} Appellant further argues that "counsel was deficient in not moving to suppress the identification procedure" police used in showing J.P. a single photograph of him. This procedure need not be analyzed, as this argument squarely fails the second prong of Strickland. Appellant's admission of sexual relations with *Page 17 
J.P. renders her out-of-court identification of him immaterial to the case against appellant. In other words, without the identification, the result of the procedure would still have been the same.
 {¶ 38} Appellant's third argument regarding ineffective assistance of counsel concerns an objection to the lesser included offense of sexual battery. Appellant's naked assertion that counsel was ineffective when objecting to the sexual battery instruction is both illogical and unsupported by case law. Appellant's entire argument on this point reads as follows: "Counsel objected to the court's giving of an instruction on the lesser offense of sexual battery. Sexual battery would be a probational offense." Pursuant to App.R. 12(A)(2), we "may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Accordingly, we decline to render an opinion on this issue.
 {¶ 39} Appellant's final assignment of error is overruled.
Judgment affirmed in part and vacated in part.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing said court to carry this judgment into execution. The defendant's conviction having been *Page 18 
affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., CONCURS; CHRISTINE T. McMONAGLE, J., DISSENTS WITH SEPARATE OPINION