[Cite as *Doss v. State*, 2017-Ohio-1286.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104867**

## IRAN DOSS

PLAINTIFF-APPELLANT

vs.

## STATE OF OHIO

DEFENDANT-APPELLEE

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-08-665993

**BEFORE:** E.T. Gallagher, J., McCormack, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 6, 2017

**ATTORNEY FOR APPELLANT**

Paul A. Mancino, Jr.
Mancino, Mancino & Mancino
75 Public Square Bldg., Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Brian R. Gutkoski
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Iran Doss ("Doss"), appeals from the judgment of the Cuyahoga County Court of Common Pleas, in which that court, following a bench trial, entered judgment in favor of defendant-appellee, state of Ohio (the "state"), on Doss's claim for statutory wrongful imprisonment. Doss raises the following assignments of error for our review:

> 1. Plaintiff was denied due process of law as the judgment of the court is contrary to law and the court's prior ruling in the same case.
>
> 2. Plaintiff was denied due process of law as the ruling by the court is not only against the manifest weight of the evidence but is also contrary to law.

**{¶2}** After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural History

**{¶3}** In April 2005, Doss was named in a three-count indictment, charging him with two counts of rape in violation of R.C. 2907.02 and a single count of kidnapping in violation of R.C. 2905.01, with a sexual motivation specification.

**{¶4}** Following a jury trial, Doss was convicted of rape, as charged in Count 2 of the indictment, and the single count of kidnapping. At sentencing, the trial court imposed concurrent four-year sentences on each count. Doss was also found to be a sexually oriented offender subject to registration.

**{¶5}** On appeal, Doss challenged his rape and kidnapping convictions on several grounds, including a challenge to the evidence supporting his convictions. Doss argued that the state failed to present sufficient evidence that the victim, J.P., was substantially

impaired due to a mental or physical condition and that Doss knew of that substantial impairment. This court, in a two-to-one decision, concluded that there was sufficient evidence to support a finding that J.P.'s capacity to consent was substantially impaired and that Doss knew or had reason to know of the substantial impairment. *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2007-Ohio-6483 ("*Doss I*").

{¶6} Upon reconsideration, a split panel vacated both the kidnapping and the rape convictions. *State v. Doss,* 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449 ("*Doss II*"). The *Doss II* majority held that the state failed to present sufficient evidence showing that Doss knew or had reason to know that J.P.'s ability to consent was substantially impaired. *Id*. at ¶ 21-23. This court vacated the convictions and ordered Doss discharged from prison. The state appealed the vacation of the rape conviction, but the Ohio Supreme Court declined review. *State v. Doss*, 118 Ohio St.3d 1507, 2008-Ohio-3369, 889 N.E.2d 1025.

{¶7} After his release, Doss filed an action for declaratory judgment pursuant to R.C. 2743.48, seeking compensation from the state for wrongful imprisonment. In July 2010, Doss filed a motion for summary judgment, citing our decision in *Doss II*. The motion, which contained no attachments or exhibits, relied exclusively on *Doss II*. The state opposed the motion for summary judgment, offering the transcripts from the criminal trial to show that there were issues of fact and arguing that Doss had failed to establish his innocence by a preponderance of the evidence.

{¶8} In January 2011, the trial court granted Doss's motion for summary judgment, stating, in pertinent part:

The court of appeals' decision to reverse and vacate plaintiff Doss's conviction and order his immediate release can only be interpreted to mean that either plaintiff Doss was innocent of the charges upon which he was convicted, or that no crime was committed by plaintiff Doss, or both.

**{¶9}** This court affirmed the grant of summary judgment in a two-to-one decision. *Doss v. State*, 8th Dist. Cuyahoga No. 96452, 2011-Ohio-6429 ("*Doss III*"). The majority reiterated that its review of the record in *Doss II* had revealed that Doss's statement was the only evidence of J.P.'s mental condition and that the state had presented no evidence that Doss knew, or should have known, that J.P.'s ability to resist or consent was substantially impaired because of voluntary intoxication. *Id*. at ¶ 15. Accordingly, this court found no genuine issue of fact and no error in the trial court's entry of summary judgment. *Id*. at ¶ 17.

**{¶10}** The dissenting judge stated:

Our holding in [*Doss II*] does not mean that Doss is innocent—merely that, based upon the evidence the state presented, Doss's guilt could not be established beyond a reasonable doubt. The same cannot automatically be said of whether Doss can show by a preponderance of the evidence that he did not know or reasonably should not have known of the victim's incapacity.

*Id*. at ¶ 21 (Celebrezze, J., dissenting).

**{¶11}** In *Doss v. State,* 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229 ("*Doss IV*"), the Ohio Supreme Court reversed this court's judgment in *Doss III*, stating, in pertinent part:

The record shows that Doss filed his motion for summary judgment relying solely on the Eighth District's decision in *Doss II*. And the trial court granted summary judgment on that basis alone. Specifically, the trial court stated:

The court of appeals' decision to reverse and vacate plaintiff Doss's conviction and order his immediate release *can only be interpreted to mean*

that either plaintiff Doss was innocent of the charges upon which he was convicted, or that no crime was committed by plaintiff Doss, or both.

(Emphasis sic.)

This conclusion was incorrect. The trial court relied solely on the court of appeals' reversal and vacation of the conviction to hold that Doss was entitled to judgment as a matter of law. It did not require a hearing or additional evidence. It simply cited the court of appeals' holding that the state had not offered sufficient evidence to prove Doss's convictions. And in affirming the trial court's grant of summary judgment, the Eighth District correctly acknowledged *Walden*'s [47 Ohio St.3d 547, N.E.2d 962 (1989)] rule that an acquittal does not necessarily establish actual innocence, but then applied the rule incorrectly. Despite the jury's verdict of guilt and without any evidence from Doss, the majority held that the record showed insufficient evidence of the alleged victim's substantial impairment. Thus, the judgment of the trial court that found Doss to be eligible for compensation and the appellate court's judgment affirming that finding were not based upon an affirmative showing of actual innocence. They were based on a dearth of evidence of guilt. Both courts relieved Doss of his statutory obligation to prove by a preponderance of the evidence that he did not commit the charged offense, including all lesser included offenses, an obligation that must be fulfilled before he is allowed to claim the status of one who was "wrongfully imprisoned."

To show actual innocence under the wrongful-imprisonment statute, Doss must prove that "the charged offense, including all lesser-included offenses, either was not committed by [him] or was not committed by any person." R.C. 2743.48(A)(5). This court has emphasized that this standard is not satisfied by an acquittal or a finding of legal insufficiency of the evidence. *Walden*, 47 Ohio St.3d at 52, 547 N.E.2d 962. The General Assembly requires a showing of innocence to be made affirmatively and adjudicated de novo before a claimant can be found to be eligible for compensation in a wrongful-imprisonment action.

* * *

Not every person who is released from prison because of a successful appeal is entitled to compensation. The legislature set forth a procedure for claimants like Doss to follow in R.C. 2743.48, so that the common pleas court could actively separate demonstrably innocent persons who have been wrongfully imprisoned from persons who have merely avoided criminal liability. We hold that one who claims to be a "wrongfully imprisoned individual" under R.C. 2743.48 must prove all of the factors in R.C. 2743.48(A) by a preponderance of the evidence before seeking compensation from the state for wrongful imprisonment. We also hold that a trial court adjudicating proof of innocence pursuant to R.C. 2743.48(A)(5) may not find that a claimant has been

wrongfully imprisoned based solely on an appellate court judgment vacating a felony conviction due to insufficient evidence and discharging the prisoner without a remand for a new trial. We therefore reverse the judgment of the court of appeals and remand this matter to the trial court for further proceedings.

*Doss IV* at ¶ 19-22.

**{¶12}** On remand, the matter proceeded to a civil bench trial in August 2013. Prior to trial, the parties stipulated to the submission of the entire transcript from Doss's criminal trial, where the following evidence was adduced:

> On the night of December 31, 2004, 23-year-old J.P. celebrated New Year's Eve with friends at Club Moda near downtown Cleveland. It is undisputed that J.P. consumed alcohol during the course of the evening. J.P. remembers being on the dance floor shortly after midnight, when what she describes as a "black curtain" came down over her. J.P. does not recall what happened from that time until approximately 8:00 a.m. the next morning, when a woman she did not know shook her awake. J.P. was in a strange bed, and she was not wearing her own clothing. She was also nauseous, disoriented, and bruised.

> J.P. noticed a man in the room, who she later identified as [Doss]. The man and woman told J.P. to clean herself up, then drove her home. During the drive, the woman told J.P. that she and Doss had found her intoxicated at the bar, that J.P. did not know where her friends were, and that they had taken J.P. home with them to be good Samaritans. The woman also mentioned a man named Tyson, whom J.P. did not know. The woman gave J.P. a napkin with the name Eileen and a telephone number on it, stating that J.P. should call her sometime. According to J.P., [Doss] did not say anything to her.

> After she was dropped off, J.P. continuously vomited, and when she urinated, she experienced pain in her vaginal area. J.P. called a friend, who took her to the hospital. J.P. was given a rape kit, and the police arrived to question her. No drugs were found in her system, and DNA tests later revealed that semen found on J.P.'s underwear belonged to Tyson Simpkins (Simpkins), a bouncer at Club Moda who was working that night. Simpkins pled guilty to abduction and sexual battery.

> Using the napkin given to J.P. with the name and number on it, the Bedford Police subsequently located Eileen Wiles ("Wiles") and her

boyfriend, [Doss], both of whom J.P. identified from photographs as the man and woman in whose apartment she awoke and who drove her home.

On January 20, 2005, [Doss] gave a written statement to the police regarding the incident. In the statement, [Doss] recalled that as he and Wiles were getting ready to leave Club Moda around 2:00 a.m., they noticed that J.P. was there, apparently intoxicated and without a ride home. She was unable to give directions to her home, so [Doss] and Wiles decided to take J.P. to their place to sleep and then drive her home later that morning. Specifically, the pertinent parts of [Doss]'s statement are as follows:

So I told the girl that we would take her home in the morning. She said ok. So we went to our apartment and as we were walking upstairs the girl kept hugging me so I pushed her away because my girlfriend was their [sic]. When we got into the apartment we made coffee and gave some to the girl and she said thanks and thanks for taking me home. So we said we would take her home the next morning. So [Wiles] gave her some PJs and we all went to bed and the girl kept hugging on me so I thought she wanted me but my girlfriend was there. So we went to sleep and the girl woke me up by hugging me so we were forplaying [sic] under the blankets, so we went into the living room so we wouldn't wake [Wiles] up. We were still forplaying [sic] in the living room and I was kissing her and she took of [sic] my shirt and I pushed her shirt up and started kissing her bress [sic] and she started filling [sic] on my penis and I was filling [sic] on her vagina. She started [sic] pulling her pants down and I was rubbing her vagina and then I pulled my pants down and she got on top of me while I was sitting on the sofa. We had sex for about five minutes, then she pulled me to the floor, and we had sex there, for about 10 more minutes. After we were done, I was getting up, and she pushed my head down, towards her vagina, and I started to give her oral sex, for about one to two minutes. After that, we both put our PJs on, and went back to bed. [Wiles] was still sleeping and me and the girl cuddled a little and fell asleep. The next morning we woke up around 8:30 am and she said thanks for taking care of her * * *.

Additionally, when asked whether [Doss] thought J.P. seemed intoxicated, he said, "Yes, she was hugging me and she didn't know me and she said she loved me." When asked if anyone else said J.P. was intoxicated, [Doss] replied, "Yes, the bartender and the bouncer." Finally, the following question and answer are found in [Doss]'s written statement: "Q: Before you left your bedroom with this girl what did you say to her?" A: "After we were fondling each other I said do you want to go in the living room and she said yes."

*Doss II,* 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, at ¶ 2-7.

{¶13} Doss did not testify at his criminal trial. At the civil trial, however, Doss offered testimony in support of his wrongful imprisonment action against the state. Doss testified that J.P. first came to his attention through his then girlfriend, Wiles. He stated:

> I was out dancing salsa by myself. [Wiles] came up and told me, "honey, look. There's two men and a guy — two men and a girl going out the back door." I said to her, "So?" Meaning I didn't care. I was just there to have fun with her and enjoy the New Year's. Then she came back and told me again. Then she walked over to where the young lady and the bouncer and security guard was. They brought her inside. Sat her down on the sofa. So I walked over there.

Doss further stated:

> After 2:00 a.m. when I went over there, the young lady was sitting down with a group of people, the bouncer, and I guess it was a security guard or the bartender came over there. * * * We were just chitchatting. I was telling [Wiles] its time to go. Then the young lady stood up and she hugged me all of a sudden. Then I kind of pushed her back because [Wiles] was standing there and I didn't, you know, I felt that was wrong, so I just pushed her down. * * * Then she got back up and hugged me again.

{¶14} Doss testified that Wiles asked J.P. if she needed a ride home. According to Doss, J.P. accepted the invitation. However, Doss refused to drive J.P. home that evening because it was too late. Instead, Doss recommended that J.P. sleep over at the apartment he shared with Wiles. Doss stated that J.P. agreed and willingly drove home with them. Doss described J.P. as "happy" and "normal." He stated that she was coherent and was able to carry on a conversation.

{¶15} Upon arriving at the apartment complex, Doss testified that J.P. was able to walk up the stairs to his apartment while Wiles held her hand. Doss testified that he did

not assist J.P. in climbing up the apartment stairs. Once inside the apartment, Wiles made coffee and he, Wiles, and J.P. talked for a while before going to bed.

{¶16} Regarding sleeping arrangements, Doss testified that the three of them simply climbed into the same bed together. Doss stated that when Wiles fell asleep, J.P. began to fondle him. According to Doss, he and J.P. then went to the living room and engaged in consensual sex. Doss testified that everything seemed normal the next morning. Doss stated that "everybody was fine" and woke up "perky." Doss testified that he, Wiles, and J.P. "chitchatted" and drank coffee before Wiles drove J.P. home.

{¶17} Wiles testified at the civil trial on behalf of the state. Wiles did not testify at Doss's criminal trial. Wiles testified that she and Doss went to Club Moda to celebrate New Year's Eve on the night of the incident. Wiles and Doss danced and consumed alcohol throughout the evening. At some point, Wiles lost contact with Doss and went to the second floor of the club to sit by herself. Wiles testified that she has no knowledge of what Doss was doing in the club during that period of time.

{¶18} Wiles testified that she first encountered J.P. when she and Doss were leaving the club. She stated:

> [I] only learned of her when I ran across her when I seen her outside of the door where there was a back door of the club where it looked like some — two men or however many men was kind of manhandling her. Then when they brought her in, all I can recall is I asked her permission is who was she here with? Did she have an ID or anything? She said she had an ID and her phone was in her purse. Her phone was completely dead. She said she had money. I told her — and I even gave her purse to her so she could look herself. Nothing in her purse but her ID and her phone.

{¶19} Wiles testified that it was Doss who insisted on taking J.P. to their apartment. Contrary to Doss's testimony, Wiles strongly denied offering J.P. a ride home. She stated that she wanted to take J.P. to the hospital, but that Doss insisted on taking her home with them because it was "too late." Wiles stated that she "felt very negative towards the whole thing" and did not approve of Doss's decision to take J.P. home.

{¶20} Wiles testified that J.P. was "really, really drunk" and appeared to be "in bad shape." She stated that "her knees was [sic] bloody red, not bruised knees. Bloody red." Wiles testified that J.P. was so intoxicated that she could not get into Doss's vehicle without assistance. Further, when they arrived at the apartment complex, J.P. was too intoxicated to walk up the stairs by herself and had to be physically carried up the stairs by Doss. Wiles testified that "as soon as we got up and opened the door, she had to throw up. She was sick."

{¶21} Wiles testified that J.P. was supposed to sleep on the pull-out couch. However, when she woke up, Wiles was surprised to find J.P. in her bed. Wiles denied approving or even knowing how J.P. got into her bed. She testified that "[she] would never do something [as] stupid" as allowing a strange woman to sleep in her bed with her boyfriend. Wiles further stated that she did not observe any sexual conduct between Doss and J.P. that evening. However, Wiles testified that Doss later admitted to her that he had engaged in sexual conduct with J.P. Wiles testified that she was disgusted and ended their relationship.

{¶22} J.P. testified at the civil trial and reiterated her previous testimony concerning her memory loss on the night of the incident. She explained that while she was dancing at the club, something like a black curtain came over her, and the next thing she remembered was waking up in the middle of a bed with a woman she did not know standing over her. J.P. stated that she was disoriented and felt as if she was "coming away from anesthesia after surgery." She testified that she was immediately aware that she had been sexually assaulted. J.P. was frightened and demanded to be taken home. J.P. testified that it was only during the ride home that Wiles returned her cell phone to her. J.P. stated that as the vehicle approached her apartment, she jumped out of the vehicle as it was slowing down and ran into the open garage door to her unit and locked every door behind her. J.P. then contacted her friend and was taken to a nearby hospital for examination.

{¶23} In July 2016, the trial court issued an opinion and order entering judgment in favor of the state and against Doss on his claim for wrongful imprisonment. The trial court found that Doss failed to establish by a preponderance of evidence that he was innocent of criminal behavior, stating

It is abundantly clear under the circumstances of this case — as augmented by the testimony of both Doss and Eileen Wiles during the civil trial — that any reasonable trier of fact would be able to find that any sexual activity * * * on January 1, 2005 was not consensual on J.P.'s part.

The rape charge further alleged and required a finding that "Iran Doss knew or had a reasonable cause to believe that [J.P.'s] ability to resist or consent was substantially impaired because of a mental or physical condition." The record of the case as set forth in the combined criminal and civil trials, and as comprehensively discussed above, would also support a finding by a trier of fact that Doss was aware of J.P.'s vulnerable

state. Thus, it is likely that a verdict finding Doss guilty of rape would have been returned against him.

It is likely that the offense of kidnapping would also be accepted by a jury. The offense of kidnapping could be satisfied if a trier of fact found that "by deception [J.P. was] removed from the place where she was found or restrained of her liberty for the purpose of * * * engaging in sexual activity * * * with [J.P.] against her will."

{¶24} Doss now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Application of Res Judicata

{¶25} In his first assignment of error, Doss argues he was denied due process of law "as the judgment of the court is contrary to law and is inconsistent with the court's prior rulings in the same case." Doss contends that because both the trial court and this court have previously found merit to Doss's arguments under R.C. 2743.48(A), "the ruling that no crime was committed should, at a minimum, be considered res judicata."

{¶26} The doctrine of res judicata bars a defendant "from raising and litigating in any proceeding except an appeal from [a final] judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial * * * or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967).

{¶27} Doss's reliance on the doctrine of res judicata is without merit. Although Doss correctly notes that this court previously affirmed the trial court's judgment granting Doss summary judgment on his wrongful imprisonment claim in *Doss III*, 8th Dist. Cuyahoga No. 96452, 2011-Ohio-6429, the decision was reversed by the Ohio Supreme

Court. Accordingly, the doctrine of res judicata is inapplicable to the circumstances presented in this case.

**{¶28}** Doss's first assignment of error is overruled.

### B. Manifest Weight of the Evidence

**{¶29}** In his second assignment of error, Doss argues the trial court's judgment is against the manifest weight of the evidence and is contrary to law.

**{¶30}** When reviewing a civil appeal from a bench trial, we apply a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 5 (8th Dist.), citing App.R. 12(C) and *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). A verdict supported by some competent, credible evidence going to all the essential elements of the case must not be reversed as being against the manifest weight of the evidence. *Domaradzki v. Sliwinski*, 8th Dist. Cuyahoga No. 94975, 2011-Ohio-2259, ¶ 6; *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

**{¶31}** As the Ohio Supreme Court explained in *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier of fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight

is not a question of mathematics, but depends on its effect in inducing belief.'"

Id. at ¶ 12, quoting State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th Ed.1990).

**{¶32}** In assessing whether a verdict is against the manifest weight of the evidence, we examine the entire record, weigh the evidence and all reasonable inferences, consider the witnesses' credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the verdict must be overturned and a new trial ordered. State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶33}** In weighing the evidence, we are guided by a presumption that the findings of the trier of fact are correct. Seasons Coal at 80. This presumption arises because the trier of fact had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. Thus, "to the extent that the evidence is susceptible to more than one interpretation," we will "construe it consistently with the * * * verdict." Berry v. Lupica, 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 22 (8th Dist.), citing Ross v. Ross, 64 Ohio St.2d 203, 414 N.E.2d 426 (1980).

**{¶34}** A "wrongfully imprisoned individual" is defined in R.C. 2743.48(A) as an individual who satisfies each of the following requirements:

> (1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated or was dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and no criminal proceeding is pending, can be brought, or will be brought by any prosecuting attorney, city director of law, village solicitor, or other chief legal officer of a municipal corporation against the individual for any act associated with that conviction.

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by a court of common pleas that the offense of which the individual was found guilty, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

**{¶35}** In this case, the parties do not dispute that Doss has satisfied the requirements set forth in R.C. 2743.48(A)(1)-(4).   Thus, our analysis is limited to the application of R.C. 2743.48(A)(5).

**{¶36}** Pursuant to R.C. 2743.48(A)(5), the claimant bears the burden of proving by a preponderance of the evidence his innocence of the crimes for which he was convicted and all lesser included offenses.   *Walden v. State*, 47 Ohio St.3d 47, 547 N.E.2d 962 (1989), syllabus.   The claimant must demonstrate that the "'offense of which he was found guilty, including all lesser-included offenses, either was not committed by him or was not committed by any person.'"   *Ellis v. State*, 64 Ohio St.3d 391, 393, 596 N.E.2d 428 (1992), quoting R.C. 2743.48(A)(5).   Only after the trial court makes a

determination that the claimant satisfied his burden will the claimant then qualify as a wrongfully imprisoned person under the statute. *Rodriguez v. Petro*, 8th Dist. Cuyahoga No. 87548, 2006-Ohio-5572, ¶ 6.

**{¶37}** The wrongful imprisonment statutes were intended to compensate the innocent for wrongful imprisonment. The Ohio Supreme Court explained the rationale for this approach in cases where wrongful imprisonment is alleged, stating:

> The requirement that "no criminal proceeding * * * can be brought * * * against the individual for any act associated with that conviction" is of critical importance. This statutory language is intended to filter out those claimants who have had their convictions reversed, but were committing a different offense at the time that they were engaging in the activity for which they were initially charged. When the General Assembly enacted Ohio's wrongful imprisonment legislation, it "intended that the court of common pleas actively separate those who were wrongfully imprisoned from those who have merely avoided criminal liability."

*Gover v. State*, 67 Ohio St.3d 93, 95, 616 N.E.2d 207 (1993).

**{¶38}** In this case, Doss was originally convicted of violating R.C. 2907.02(A)(1)(c), which defines rape as "[n]o person shall engage in sexual conduct with another * * * when * * * [t]he other person's ability to resist or consent is substantially impaired[1] because of a mental or physical condition * * * and the offender knows or has

---

[1] Substantial impairment may be shown by proffering evidence that demonstrates the victim's diminished ability to act or think. *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987). Voluntary intoxication is a mental or physical condition that could cause substantial impairment. *State v. Doss*, 8th Dist. Cuyahoga No. 88443, 2008-Ohio-449, ¶ 13, citing *In re King*, 8th Dist. Cuyahoga Nos. 79830 and 79755, 2002-Ohio-2313. Sexual conduct with an intoxicated person under the Revised Code becomes criminal when the victim's "ability to resist or consent is substantially impaired by reason of voluntary intoxication." *In re King* at ¶ 22, citing *State v. Martin*, 12th Dist. Brown No. CA99-09-026, 2000 Ohio App. LEXIS 3649 (Aug. 14, 2000). Substantial impairment can be demonstrated by the testimony of those who have interacted with the victim. *State v. Brady*, 8th Dist. Cuyahoga No. 87854, 2007-Ohio-1453, ¶ 78. Additionally,

reasonable cause to believe that the other person's ability to resist or consent is substantially impaired * * *." Additionally, Doss was convicted of violating R.C. 2905.01(A)(2) and (4), which defines kidnapping as "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, * * * [t]o facilitate the commission of any felony * * *; [or] [t]o engage in sexual activity * * * with the victim against the victim's will."

{¶39} On appeal, Doss argues that he satisfied his burden to affirmatively establish his innocence under R.C. 2743.48(A)(5). Contrary to the findings expressed in the trial court's detailed 26-page opinion, Doss contends that "there is no evidence that [he] knew, or should have known, that [J.P.]'s ability to resist or consent was substantially impaired because of her voluntary intoxication." In support of his position, Doss relies on the following statement in *Doss III*:

> [In *Doss II*], [w]e noted that "[t]he only evidence in the record of events happening between 2:30 and 8:00 a.m. on New Year's Day is [Doss's] statement." After reviewing the evidence in the record, this court stated, "[t]he only evidence about [J.P.'s] mental condition at the time of the alleged rape is found in [Doss's] statement. A careful review of this statement reveals no evidence that [Doss] knew, or should have known, that J.P.'s 'ability to resist or consent is substantially impaired because of voluntary intoxication.'" We noted that "the state presented no evidence in opposition to [Doss's] statement."

*Doss III*, 8th Dist. Cuyahoga No. 96452, 2011-Ohio-6429, at ¶ 15.

{¶40} After careful review, we find no merit to Doss's position. As stated, Doss's challenge to the weight of the evidence relies extensively on our holding in *Doss*

---

whether an offender knew or had reasonable cause to believe a victim was impaired may be reasonably inferred from a combination of the victim's demeanor and others' interactions with the victim. *State v. Novak*, 11th Dist. Lake No. 2003-L-077, 2005-Ohio-563, ¶ 25.

*III*.   However, the Ohio Supreme Court reversed our judgment, finding that this court incorrectly applied "*Walden*'s rule that an acquittal does not necessarily establish actual innocence."   *Doss IV*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, at ¶ 20. As noted by the Ohio Supreme Court, our opinion in *Doss III* improperly relied on the "dearth of evidence of guilt" in Doss's criminal case and not on "an affirmative showing of actual innocence."   *Id*.   The Ohio Supreme Court explained that our analysis failed to answer the civil question of "whether Doss can show by a preponderance of the evidence that he did not know, or could not reasonably have known, of the alleged victim's incapacity."   *Doss IV* at ¶ 17, citing *Ratcliff v. State*, 94 Ohio App.3d 179, 184, 640 N.E.2d 560 (4th Dist.1994) (evidence insufficient to prove guilt beyond a reasonable doubt does not necessarily prove innocence by a preponderance of the evidence). Pursuant to the Ohio Supreme Court's judgment in *Doss IV*, we find Doss's reliance on certain statements rendered by this court in *Doss III* to be unpersuasive.

{¶41} With respect to Doss's burden of proof under R.C. 2743.48(A)(5), we note that Doss's civil trial produced significant testimony that was not adduced at Doss's criminal trial, and therefore, was not available to this court at the time *Doss II* and *Doss III* were rendered.   As stated, Wiles did not testify at Doss's criminal trial.   At Doss's civil trial, however, Wiles testified at length concerning the nature of J.P.'s intoxication and Doss's interactions with J.P. on the night of the incident.   Wiles testified that J.P. was very intoxicated.   Wiles stated that J.P. had to be assisted into Doss's vehicle as they left Club Moda, and had to be physically carried up the apartment stairs by Doss because

she was too unstable to traverse them herself. Wiles further testified that upon arriving inside the apartment, J.P. "violently threw up."

{¶42} On this record, we agree with the trial court's statement that "[i]t is highly questionable that someone in J.P.'s condition as described throughout Wiles's testimony at trial would have the capacity to initiate the sexual conduct and activity as alleged by Doss." In our view, the testimony presented at the civil trial demonstrated that Doss knew or had reasonable cause to believe J.P. was substantially impaired because of her voluntary intoxication, and thereby, unable to resist or consent to the sexual activity. Under these circumstances, Doss failed to demonstrate by a preponderance of evidence that he was innocent of criminal behavior. Accordingly, we find the trial court's judgment in this case is supported by competent, credible evidence.

{¶43} We recognize that Doss challenges Wiles's credibility and argues that her civil trial testimony was inconsistent with her 2005 written police statement. However, our review of the record, and the trial court's 26-page opinion reflects that the trial court carefully considered Wiles's testimony in conjunction with her written police statement. Deferring to the trial court's resolution of any perceived inconsistencies, we are unable to conclude that the trial court's judgment was against the manifest weight of the evidence.

{¶44} Doss's second assignment of error is overruled.

{¶45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

TIM McCORMACK, P.J., and
SEAN C. GALLAGHER, J., CONCUR