[Cite as *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No.   94952**

---

## REVILO TYLUKA, L.L.C.,

APPELLANT and
CROSS-APPELLEE,

vs.

## SIMON ROOFING & SHEET METAL CORPORATION,

APPELLEE and
CROSS-APPELLANT.

---

**JUDGMENT:
AFFIRMED IN PART; REMANDED**

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-657574

**BEFORE:**   Keough, J., Kilbane, A.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   April 21, 2011

Corsaro & Associates Co., L.P.A.,Christian M. Bates, Joseph G. Corsaro, and Scott P. Roe, for appellant and cross-appellee.


Glenn R. Osborne and Robert M. Palma, for appellee and cross-appellant.

KATHLEEN ANN KEOUGH, Judge.

{¶ 1}  Plaintiff-appellant and cross-appellee, Revilo Tyluka, L.L.C. ("Revilo"), appeals the trial court's decision that the roof replaced by defendant-appellee and cross-appellant, Simon Roofing & Sheet Metal Corporation ("Simon Roofing"), is in compliance with the Ohio Basic Building Code.   Simon Roofing cross-appeals challenging the trial court's determination and award of damages.   For the following reasons, we affirm the trial court's decision, but we remand for a redetermination of damages.

{¶ 2}  In 2008, Revilo filed a complaint against Simon Roofing alleging breach of contract, negligence, breach of warranty of fitness for a particular purpose, and fraudulent inducement, concerning a replacement roof installed by Simon Roofing at Revilo's facility located on Kelly Avenue in Cleveland,

Ohio. Simon Roofing filed a counterclaim seeking payment of the outstanding balance due from Revilo. The matter proceeded to a bench trial, at which both Revilo and Simon Roofing presented witnesses, including experts in the field of roof construction. Revilo also presented two engineers. On the final day of trial, the trial judge viewed Revilo's roof on site.

{¶ 3} At the close of the testimony and evidence, the parties submitted posttrial briefs and proposed findings of fact and conclusions of law. The trial court found that although the replacement roof was in compliance with the Ohio Basic Building Code, there were some deficiencies with the roof. Therefore, the trial court awarded damages in favor of Revilo in the amount of $57,500. This award was offset against the remaining balance owed by Revilo to Simon Roofing. Accordingly, Revilo was ordered to pay Simon Roofing $53,593, plus interest from July 2, 2007. The trial court issued findings of facts and conclusions of law supporting its decision in March 2010.

{¶ 4} Revilo appeals, raising six assignments of error. Simon Roofing cross-appeals, challenging the court's determination and award of damages.

{¶ 5} When reviewing civil appeals from bench trials, we apply a manifest-weight standard of review. App.R. 12(C); *Seasons Coal v. Cleveland* (1984), 10 Ohio St.3d 77, 461 N.E.2d 1273. We presume that the trial court's findings were correct and will not reverse its decision as against the manifest weight of the evidence if it is "supported by some competent, credible evidence

going to all the essential elements of the case." Id. at 80, quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.

Revilo's Appeal

**{¶ 6}** Revilo argues in its first and second assignments of error that the trial court's finding that the roof was in compliance with the Ohio Basic Building Code and that Simon Roofing was therefore not contractually obligated to add slope to the roof was contrary to law and against the manifest weight of the evidence.

**{¶ 7}** In its findings of fact, the trial court stated that Section 1510.1 of the Ohio Basic Building Code "requires that for any reroofing job, the roof *as installed* must have a minimum of two percent (2%) slope *or* have 'positive roof drainage.'" (Emphasis added.) The trial court found that Revilo's original roof did not have any slope. However, the trial court found that the "roof has positive roof drains throughout the roof," and determined that any "standing water on the roof" could be corrected by installing additional drains.

**{¶ 8}** In its conclusions of law, the trial court, concluded that "[t]he parties did not bargain for a sloped roof, nor was one required to be installed as there were positive roof drains that alleviated any ponding of water, except in certain areas where an additional four drains * * * are to be installed, and that the roof meets applicable building codes."

**{¶ 9}** Revilo argues on appeal that the trial court erred as a matter of law in finding that the roof, as installed by Simon Roofing, complied with the Ohio Basic Building Code. Revilo specifically argues that the roof is not in compliance with the Ohio Basic Building Code because (1) the roof, as installed, does not have the requisite degree of slope and (2) the number of fasteners used to secure the insulation to the roof decking is not in accordance with the manufacturer's specifications.

Code Compliance: Slope versus Positive Roof Drainage

**{¶ 10}** Revilo first contends that the trial court erred in its interpretation of the Ohio Basic Building Code, specifically the section pertaining to reroofing. Ohio Adm.Code 4101:1-15, titled "Roofs," codifies the Ohio Basic Building Code ("the code") for "Roof Assemblies and Rooftop Structures."[1] Ohio Adm.Code 4101:1-15-01.

**{¶ 11}** "Reroofing" is governed by Section 1510 of the code. Section 1510.1 generally provides that "materials and methods of application used for recovering or replacing an existing roof covering shall comply with the requirements of Chapter 15." However, this general rule contains an exception, which states: "Reroofing shall not be required to meet the minimum design slope requirement of one-quarter unit vertical in 12 units

---

[1]Reference to the provisions of the Ohio Basic Building Code will be made in this court's opinion.

horizontal (2-percent slope) in Section 1507 for roofs that provide positive roof drainage."

{¶ 12} The debate in this case centers around this exception to the general rule. Revilo argues on appeal that the exception requires a replaced roof to have the requisite 2 percent slope unless the existing roof already provided positive roof drainage. Simon Roofing, however, claims that the replaced roof must have either 2 percent slope or positive roof drainage. Or, to put it differently, the 2 percent slope is not required if the replaced roof provides positive roof drainage.

{¶ 13} Irrespective of our reading of the code, we find that Revilo is attempting to assert a different interpretation of the code than it asserted in the trial court. After trial, Revilo submitted proposed findings of fact and conclusions of law to the trial court and requested that they be adopted. Specifically, Revilo submitted the following:

{¶ 14} "9. Section 1510.1 of the Ohio Basic Building Code requires that for any re-roofing job, the roof *as installed* must have a minimum of two percent (2%) slope *or* have 'positive roof drainage.'

{¶ 15} "* * *

{¶ 16} "11. The roof *as installed* by Simon Roofing did not have the minimum two percent (2%) slope as required by the Ohio Basic Building Code.

{¶ 17} "12.   The roof *as installed* by Simon Roofing did not provide for 'positive roof drainage' because water did not drain off the roof within forty-eight (48) hours of rainfall. * * *

{¶ 18} "* * *

{¶ 19} "27.   The roof *as installed* by Simon Roofing is in violation of the Ohio Basic Building code because it does not have the requisite two percent (2%) slope and does not provide for positive roof drainage."   (Emphasis added.)

{¶ 20} The trial court adopted (as requested by Revilo) Revilo's interpretation of Section 1510.1 of the code that "for any re-roofing job, the roof, as installed must have a minimum of two percent (2%) slope or have 'positive roof drainage.'"[2]

{¶ 21} On appeal, Revilo argues that the trial court erred in this interpretation.   Revilo now maintains for the first time that Section 1510.1 requires "that when replacing an existing roof (a re-roof job), the replacement roof must provide the requisite two percent (2%) slope, unless the existing structure already has 'positive roof drainage.'" Specifically, Revilo asserts,

---

[2] Revilo asserted this same interpretation of the code in its motion for a new trial.   "Section 1510.1 provides that a re-roofing project must provide for 2% slope to the roof, or positive roof drainage.   There is no dispute that the roof as installed does not have the requisite 2% slope set forth in the Code.   Therefore, the roof as installed must have what the Code refers to as 'positive roof drainage' which both sides agree means that water drains from the roof within forty-eight (48) hours after rainfall."

"[t]he trial court appears to have taken the position that the finished product (i.e. the roof as replaced by Simon Roofing) had an adequate number of drains, had 'positive roof drainage' and therefore fell under the exception in Section 1510.1. * * * Section 1510.1 speaks very clearly to the fact that the operative question is whether or not the existing structure (i.e. the roof that was replaced by Simon Roofing) had 'positive roof drainage.' Section 1510.1 clearly provides that it is only when the existing structure has 'positive roof drainage' that the re-roofer does not need to add slope."

{¶ 22} These appellate arguments are explicitly contrary to the arguments Revilo maintained below. Revilo argued to the trial court that according to the code, the roof as installed by Simon Roofing needed to have either slope or positive roof drainage. Both Revilo and the trial court's analysis focused on whether the roof as installed satisfied the code's requirements. Revilo did not argue, and the trial court did not address, the alternate interpretation of the code that Revilo now advances on appeal. Thus, applying the general rule of waiver, Revilo has waived this new argument and cannot now assert it on appeal.

{¶ 23} In *State ex rel. Gutierrez v. Trumbull Cty. Bd of Elections* (1992), 65 Ohio St.3d 175, 177, 602 N.E.2d 622, the Ohio Supreme Court held that an "[a]ppellant cannot change the theory of his case and present these new arguments for the first time on appeal."

**{¶ 24}** Although exceptions to the waiver doctrine exist, appellate courts are particularly loath to depart from the waiver doctrine when a party makes an argument on appeal that directly contradicts the argument asserted below. *Republic Steel Corp. v. Cuyahoga Cty. Bd. of Revision* (1963), 175 Ohio St. 179, 184-185, 192 N.E.2d 47, quoting *Coppin v. Hermann* (Cincinnati Super.1899), 7 Ohio N.P. 528 (holding that issues that "'are diametrically opposed to the theory upon which the plaintiff proceeded below can not be raised for the first time on review'"). See also *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.* (1998), 128 Ohio App.3d 33, 713 N.E.2d 1075. "'The theory upon which the case was submitted and argued in the [trial] court cannot, when an adverse judgment results, be discarded and a new, contradictory theory be substituted and successfully invoked on appeal.'" *Zawahiri v. Alwattar*, Franklin App. No. 07AP-925, 2008-Ohio-3473, ¶17, quoting *Sperle v. Michigan Dept. of Corr.* (C.A.6, 2002), 297 F.3d 483, 494.

**{¶ 25}** Appellate courts refuse to review contradictory arguments because they offend the purpose behind the waiver doctrine. Id. Rejecting an argument pursuant to the waiver doctrine, "'protect[s] the role of the courts and the dignity of the proceedings * * * by imposing upon counsel the duty to exercise diligence in his or her own cause and to aid the court rather than silently mislead it into the commission of error.'" Id. at ¶ 18, quoting *State ex*

*rel. Quarto Mining Co. v. Foreman (*1997), 79 Ohio St.3d 78, 81, 679 N.E.2d 706.

{¶ 26} When an appellant makes a contradictory argument on appeal, it has more than just "silently misled" the trial court into the commission of error; instead, it has affirmatively invited the error it complains of on appeal. Id. "'[I]t is the well-settled rule that a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.'" *Fostoria v. Ohio Patrolmen's Benevolent Assn.*, 106 Ohio St.3d 194, 2005-Ohio-4558, 833 N.E.2d 720, ¶12, modified on other grounds, 107 Ohio St.3d 1426, 837 N.E.2d 1210, quoting *Lester v. Leuck* (1943), 142 Ohio St. 91, 92, 50 N.E.2d 145.

{¶ 27} We find that Revilo prevailed when the trial court interpreted the code as it requested but now claims error because it did not receive the desired result. We are not inclined to address Revilo's new argument on appeal, because Revilo cannot take advantage of the error it induced. Accordingly, we do not address whether the trial court erred in its interpretation of the code when it determined that the code did not require Simon Roofing to add slope to the replaced roof.

{¶ 28} Revilo also asserts that the trial court's determination that "[t]he parties did not bargain for a sloped roof" was against the manifest weight of the evidence because the contract provided that the roof would be replaced

according to the code. Again, Revilo argues that because the existing roof did not have positive roof drainage, the code required Simon Roofing to add slope to the new roof. Because Revilo is making the same argument as discussed above, we will not address it on appeal. We find that the trial court interpreted the code as Revilo requested and, according to that interpretation, the parties did not specifically bargain for a sloped roof because the code did not require slope to be added.[3]

{¶ 29} We will, however, address Revilo's argument that the trial court's finding that the roof as installed by Simon Roofing has positive roof drainage is against the manifest weight of the evidence. The trial court, in amended finding No. 8, stated, "The roof has positive roof drains throughout the roof which were kept after the re-roofing and the size of the sump basins of each were generally expanded to assist in the drainage of rain water. Several small areas persist in slow drainage or evaporation (an aluminum coating as specified in the contract lessens heat build-up of the roof with a corresponding slowing of evaporation) (i.e., the water does not heat up over a hot roof and flash off as quickly)."

{¶ 30} According to the interpretation of the code advanced by Revilo and adopted by the trial court, the roof as installed by Simon Roofing had to have

---

[3]Our decision in this case is fact-specific and should not be cited as authority for this court's interpretation of the Ohio Basic Building Code.

either 2 percent slope or positive roof drainage to comply with the code. It is undisputed that the roof before and after replacement did not have 2 percent slope. Accordingly, in order to comply with the code, the roof as installed had to have positive roof drainage.

{¶ 31} Pursuant to Section 1502.1 of the code, "positive roof drainage" means "[t]he drainage condition in which consideration has been made for all loading deflections of the roof deck, and additional slope has been provided to ensure drainage of the roof within 48 hours of precipitation."

{¶ 32} The facility-condition report prepared by Simon Roofing indicated that the drainage on the existing roof was "inadequate." At trial, A.J. Turner, the sales representative for Simon Roofing who prepared the facility-condition report, testified that he recommended that the existing roof be replaced because drainage was inadequate due to the ponding of water. He testified that ponding water prematurely deteriorates a roofing system that was not designed to perform under those conditions. According to Turner, the existing roof membrane was a modified granulated built-up roof that breaks down due to ponding water. He testified that ponding water could be the result of many things, including the settling of the building, inadequate drains, debris build up around the drains, and wet insulation. In fact, he testified that when he did the core sample from the existing roof, he found that the insulation was saturated.

{¶ 33} Turner testified that the drains were sumped and the basins surrounding the drains were expanded for the new roof. This process involved placing tapered insulation around the drains to funnel the water toward the drains. Turner testified that no additional drains were installed, but the roofing system that Revilo contracted for was designed to withstand any ponding water. This system included new, thicker insulation and a watertight membrane. Turner also testified that sumping the drains aids in removing water from a roof and would provide positive roof drainage. According to Turner, he and Matthew Reville, a representative of Revilo, discussed during the project that if water remained on the roof, Simon Roofing could add drains to remedy this problem. Turner testified that there was no discussion regarding adding slope or additional drains to the roof prior to entering into the contract or before work on the roof commenced.

{¶ 34} The evidence at trial was conflicting as to whether the roof as installed by Simon Roofing had positive roof drainage. Revilo's expert testified that the existence of ponding water on the roof indicated that the drainage was inadequate under the code. Revilo's expert further opined that the aluminum coating on the new roof was likely deteriorating from being subjected to ponding water for a long period of time.

{¶ 35} Although Revilo's expert classified the water remaining on the roof as "ponding," Simon Roofing's expert opined that the water remaining on

the roof would not be considered ponding and that the new roof has positive roof drainage. Additionally, Stephen Manser, president of Simon Roofing, testified that he would classify the water remaining on the roof as "birdbaths."

{¶ 36} Accordingly, we find that there was competent and credible evidence supporting the trial court's determination that the roof as installed by Simon Roofing has positive roof drainage in compliance with the code. Although the trial court found that some water remained on the roof, the water could be alleviated by installing four additional drains.

Code Compliance: Fasteners

{¶ 37} Revilo also asserts that the trial court's decision that the roof was not in compliance with the Code was against the manifest weight of the evidence because the number of fasteners required by the insulation manufacturer to attach the insulation to the roof decking was inadequate.

{¶ 38} No specific finding was made by the trial court regarding these fasteners. However, Revilo has not challenged the inadequacy of the trial court's findings of fact and conclusions of law. When the trial court's findings of fact leave a material fact undetermined, a reviewing court will presume that the issue of fact was not proved by the party bearing the burden of proof. *Casto v. State Farm Mut. Auto. Ins. Co.* (1991), 72 Ohio App.3d 410, 415, 594 N.E.2d 1004, citing *McShane v. Keiser* (1958), 108 Ohio App. 514, 155 N.E.2d 709. The trial court need not indicate which facts were not proved by the

evidence presented. Id., citing *Lugger v. Wolford* (App. 1955), 72 Ohio Law Abs. 227, 134 N.E.2d 395.

{¶ 39} The burden of proving that the fasteners did not comply with the manufacturer's specifications and the code was upon Revilo. The trial court made numerous factual findings concerning the issues presented at trial but did not specifically address the issue regarding the fasteners. We thus presume that the trial court concluded that Revilo did not meet its burden at trial. There is sufficient evidence in the record to support such a finding.

{¶ 40} Both Revilo and Simon Roofing presented experts in the field of roofing. Revilo's expert opined that the number of fasteners was inadequate pursuant to the manufacturer's specifications for the type of insulation that was used and the weather conditions that the roof would be subject to. The expert testified regarding the number of fasteners that should have been used in varying locations on the roof. But no documentation was submitted to the trial court to support the conclusions of Revilo's expert, including any documentation regarding the actual specifications required by the manufacturer of the insulation for the roof as installed by Simon Roofing for Revilo. Additionally, Simon Roofing's expert testified that the number of fasteners used was sufficient. Simon Roofing's expert testified that in determining the adequate number of fasteners, more factors needed to be taken into consideration than what was testified to by Revilo's expert.

{¶ 41} Thus, the trial court had competing expert testimony regarding whether the number of fasteners was adequate and whether they were according to the manufacturer's specifications. The trial court did not have the requisite documentation before it to determine exactly what the manufacturer's specifications were. Accordingly, we presume that the trial court, by not addressing the fasteners in its original journal entry and subsequent findings of fact and conclusions of law, implicitly found that Revilo did not satisfy its burden at trial.

{¶ 42} Accordingly, we overruled Revilo's first and second assignments of error.

## Remedy of Four Additional Drains

{¶ 43} In its third assignment of error, Revilo argues that the trial court's remedy of an additional four drains was inadequate as a matter of law. Revilo essentially maintains that because Simon Roofing did not add the requisite degree of slope as required by the code and the contract, the only remedy the trial court could have awarded was a new roof. According to Revilo, the trial court erred in "fashioning a remedy that is contrary to the building code."

{¶ 44} As we have previously determined above, Revilo's interpretation of the code at trial was that the roof as installed by Simon Roofing had to have either 2 percent slope or positive roof drainage. Having determined that the

roof, as replaced by Simon Roofing, has positive roof drainage, we do not find the trial court's remedy of adding four additional drains to alleviate the "small areas of standing water" to be an abuse of discretion. Revilo's third assignment of error is overruled.

Expert Testimony

{¶ 45} In its fourth, fifth, and sixth assignments of error, Revilo argues that the trial court erred in allowing Simon Roofing's expert to testify as to his opinion regarding certain aspects of the roof, when the expert report did not contain such opinions.

{¶ 46} Cuyahoga County Common Pleas Court Local Rule 21.1(B) states: "A party may not call on a non-party expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the non-party expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than (30) days prior to trial."

{¶ 47} The Ohio Supreme Court has held that the trial court has considerable discretion in applying Loc.R. 21.1. *Pang v. Minch* (1990), 53 Ohio St.3d 186, 194, 559 N.E.2d 1313. This court may reverse the trial court's determination only if the trial court abused its discretion. Id., citing

*Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St.3d 44, 472 N.E.2d 704. " 'The term "abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.' " *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 n.E.2d 144.

{¶ 48} This court has previously stated: "The primary purpose of Loc.R. 21 is to avoid prejudicial surprise resulting from noncompliance with the report requirement." *Preston v. Kaiser* (Nov. 8, 2001), Cuyahoga App. No. 78972, citing *Reese v. Euclid Cleaning Contrs., Inc.* (1995), 103 Ohio App.3d 141, 147, 658 N.E.2d 1096. To evaluate surprise: "'A court is not required to prohibit the witness testimony where there is no evidence appellant was prejudiced by the admission of the testimony. The determination of whether the testimony results in a surprise at trial is a matter left to the sound discretion of the trial court. In the absence of surprise, there is no abuse of discretion. This court has also found that when a complaining party knows the identity of the other party's expert, the subject of his expertise and the general nature of his testimony, a party cannot complain that they are ambushed.'" *Miller v. Gen. Motors Corp.*, Cuyahoga App. No. 87484, 2006-Ohio-5733, ¶11, quoting *Yaeger v. Fairview Gen. Hosp.* (Mar. 11, 1999), Cuyahoga App. No. 72361.

{¶ 49} Other than the local rule regarding expert witnesses, Revilo has failed to cite any legal authority in support of its contention that the trial court abused its discretion in allowing Simon Roofing's expert to render his opinion on issues not contained in his expert report. See App.R. 16(A)(7).

{¶ 50} Moreover, Revilo has failed to explain how it was prejudiced in permitting Simon Roofing's expert to testify as to his opinion. In fact, Revilo does not argue on appeal that it was surprised by the testimony of the expert. Rather, it asserts that it was prejudiced "to the extent the trial court considered this testimony in reaching its decision." This blanket assertion does not support Revilo's burden of proving that the trial court's decision allowing Simon Roofing's expert to give his opinion was unreasonable, arbitrary, or unconscionable.

{¶ 51} We find that the trial court did not abuse its discretion in allowing Simon Roofing's expert to testify as to opinions not contained in his expert report. Revilo's remaining assignments of error are overruled.

Simon Roofing's Cross-Appeal

{¶ 52} Simon Roofing maintains in its cross-appeal that the trial court's calculation of damages was against the manifest weight of the evidence.

{¶ 53} A reviewing court generally will not reverse a trial court's decision regarding its determination of damages absent an abuse of discretion. *Roberts v. United States Fid. & Guar. Co.* (1996), 75 Ohio St.3d 630, 634, 665

N.E.2d 664. As previously stated, "abuse of discretion" implies that the court exhibited an unreasonable, arbitrary, or unconscionable attitude in rendering its judgment. *Blakemore,* 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 54} Simon Roofing first challenges the trial court's decision to award Revilo $44,000 for rusted, scored, or cut decking. The trial court's journal entry provides: "C. Replace scored, rusted, and/or cut decking (10,000 square feet minus 3,700 = 6,300 square feet), up to 6,300 square feet by additional bracing in a similar fashion to existing bracing, where the deck has rusted, been scored or cut through three or more contiguous ribs and flats." The amount awarded to Revilo was $44,000.

{¶ 55} We find that this award is not an abuse of discretion. The trial court found that the contract provided that Simon Roofing would replace any damaged decking up to 10,000 square feet and that the cost of repair or replacement is approximately $7 per square foot. Simon Roofing replaced 3,700 square feet, but admittedly an additional 4,000 square feet should have been replaced. Moreover, even though only 3,700 square feet of decking was replaced, no refund was given to Revilo.

{¶ 56} Accordingly, the trial court ordered that Simon Roofing replace up to an additional 6,300 square feet of decking where needed and ordered that $44,000 be deducted from the balance due to Simon Roofing. We find that 6,300 square feet multiplied by $7.00 is $44,100. Because $7 was an

approximation, the trial awarded Revilo $44,000. We do not find this decision awarding Revilo $44,000 in damages for deck replacement to be unreasonable or arbitrary.

{¶ 57} Simon Roofing's second challenge to the trial court's award of damages pertains to the replacement of the aluminized coating. The trial court awarded Revilo $7,500 for the replacement of 15,000 square feet of aluminized paint at $.50 per square foot. Simon Roofing argues that this award is against the manifest weight of the evidence because the testimony at trial established that the discoloration and fading of the aluminized paint was normal and that it had no effect on the performance of the product. Again, we review an award of damages under an abuse-of-discretion standard. Applying this standard, we find that the trial court's award of $7,500 to Revilo was not unreasonable or arbitrary.

{¶ 58} Testimony at trial by both Revilo and Simon Roofing's experts established that the aluminized paint would fade over an approximately ten-year period. However, the fading that the trial court viewed occurred within two years' time. Additionally, there was evidence that debris was not removed from the roof before application of the aluminum coating, thereby embedding it into the roof, which could compromise the coating's performance. Finally, the trial court ordered only that 15,000 square feet of a

100,000-square-foot roof be recoated. This does not appear to be an abuse of discretion.

{¶ 59} Simon Roofing's final challenge to the trial court's determination of damages pertains to the offset award for the four additional drains. The trial court awarded Revilo $6,000 for four additional drains at $1,250 each. Simon argues that (1) the trial court miscalculated the total award, i.e., that $1,250 multiplied by four is $5,000, not $6,000 as stated, and (2) that the evidence presented at trial demonstrated that the cost of the drains would range from $450 to $1200.

{¶ 60} We agree that the trial court may have miscalculated the total award for the drains. Therefore, although we do not find an abuse of discretion in awarding Revilo an amount for the new drains, we do find that the trial court's calculation may have been in error.

{¶ 61} Accordingly, we find some merit to Simon Roofing's cross-appeal and remand the matter to the trial court for a redetermination of damages solely as it pertains to the calculation of the four additional drains.

Judgment accordingly.

KILBANE, A.J., and SWEENEY, J., concur.