[Cite as *Kraynak v. Whitacre*, 2018-Ohio-2784.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

KENNETH R. KRAYNAK, ET AL.,

Plaintiffs-Appellees,

v.

KOY L. WHITACRE, ET AL.,

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MO 0014**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2015-203

**BEFORE:**
Gene Donofrio, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Timothy Pettorini,* and *Atty. Sara Fanning*, Roetzel & Andress, LPA, 41 South High Street, Huntington Center, 21st Floor, Columbus, Ohio 43215, for Plaintiffs-Appellees, and
*Atty. Daniel Gibson, Atty. Christine Schirra, Atty. Kara Herrnstein, Atty. Matthew Warnock,* Bricker & Eckler LLP, 100 South Third Street, Columbus, Ohio 43215, and
*Atty. Kevin Colosimo, Atty. Christopher Rogers,* Frost Brown Todd LLC, Union Trust Building, 501 Grant Street, Suite 800, Pittsburgh, Pennsylvania 15219, and

*Atty. Richard Yoss, Atty. Ryan Regel, Yoss Law Office, 122 North Main Street, Woodsfield, Ohio 43793,* and *Atty. Zachary Simpson,* Gulfport Energy Corporation, 14313 North May Avenue, Suite 100, Oklahoma City, Oklahoma 73134, for Defendants-Appellants.

Dated:
July 3, 2018

**Donofrio, J.**

**{¶1}** Defendants-appellants, Koy L. Whitacre, KL.J., Inc., Gulfport Energy Corporation, Buckeye Oil Company, Clearfork Oil Company, Whitacre Oil Company, Whitacre Enterprises, Inc., and American Energy-Utica Minerals, LLC, appeal from a Monroe County Common Pleas Court judgment, resulting from a bench trial, that a certain oil and gas lease terminated due to the failure of the well at issue to produce in paying quantities.

**{¶2}** Plaintiff-Appellee, Kenneth Kraynak, is the owner of 99.18 acres of real property located in Wayne Township (the property). On August 21, 2006, appellee entered into an oil and gas lease with Whitacre Enterprises, Inc. (Whitacre Enterprises). During this transaction, Whitacre Enterprises was represented by its sole owner, Koy Whitacre (Whitacre).

**{¶3}** The lease contained two duration terms under its habendum clause. The primary term provided that the lease would last for fifteen months. The secondary term provided that the lease would continue "as much longer as oil or gas is found in paying quantities." Throughout the duration of this lease, Whitacre operated one well on appellee's property, the K. Kraynak No. 1 well (the well).

**{¶4}** In addition to Whitacre Enterprises, Whitacre wholly owns and operates Whitacre Store, LLC (Whitacre Store). While Whitacre Enterprises negotiated the original lease with appellee, Whitacre Store was responsible for servicing the well. All of Whitacre's employees and equipment are housed under Whitacre Store. Whitacre Enterprises has no employees and owns no equipment. Whitacre Enterprises transferred $300.00 a month every month to Whitacre store as operating expenses for the well. According to Whitacre, this business and transaction structure was done for accounting simplicity purposes and did not reflect the actual operating costs of the well.

Case No. 17 MO 0014

{¶5}    The oil and gas lease between Kraynak and Whitacre also contained a sublease agreement which allowed Whitacre to sublet the well. Appellant Gulfport Energy Corporation is a sub-lessee of the deep rights to the well and appellant American Energy – Utica Minerals owns an overriding royalty interest in the well.

{¶6}    On July 10, 2015, appellee filed this action in the Monroe County Common Pleas Court. Appellee sought, among other things, declaratory judgment that the well was no longer producing in paying quantities and an order quieting appellee's title to all oil and gas rights in and under the property against all appellants.

{¶7}    The years at issue concerning the well's profitability are the years 2012 through 2015. Under an analysis performed by Whitacre, which did not include the $300.00 a month Whitacre Enterprises transferred to Whitacre Store, the well resulted in a net profit each year. Under an analysis performed by Kraynak, which did include the $300.00 a month Whitacre Enterprises sent to Whitacre Store, the well resulted in a net loss each year. The only fact disputed in this case is what expenses the $300.00 a month payment from Whitacre Enterprises to Whitacre Store paid for.

{¶8}    The matter proceeded to a bench trial. At trial, appellee produced Whitacre's business records which showed the amount of gas produced by the well for the years 2012 through 2015. (Tr. Ex. 4-7). Also introduced were Whitacre's business records showing the amount of operating expenses Whitacre incurred in operating the well for those same years. (Tr. Ex. 17-20). One of those expenses was the $300.00 a month Whitacre Enterprises paid Whitacre Store. Those expenses were labeled as "operating expenses." (Tr. 36). The records showed that for each month between 2012 through 2015, the well resulted in a net loss. Moreover, Whitacre's responses to appellee's requests for admissions were admitted into evidence. These responses show that Whitacre admitted that the well's revenue did not exceed the operating expenses for the years 2012 through 2014. (Tr. 83-84, Ex 15).

{¶9}    Appellants presented testimony which showed that the $300.00 a month Whitacre Enterprises sent to Whitacre Store were blanket expenses that had no impact on the well's ability to produce in paying quantities. (Tr. 102-103). Appellants argued that the $300.00 a month did not accurately reflect the operating costs associated the well.

{¶10} In a judgment entry dated May 31, 2017, the trial court ruled that the revenue from the well was not sufficient to offset the costs of operating the well. The trial court specifically pointed out the $300.00 a month Whitacre Enterprises transferred to Whitacre Store for operating costs, which amounted to $3,600.00 a year. The $300.00 a month was greater than any revenue the well generated for the years 2012 through 2015. The trial court ruled that the $300.00 a month payment combined with the other expenses in operating the well that Whitacre Enterprises reported rendered the well's revenue less than its expenses. The trial court ruled in favor of appellee on his quiet title action and deemed the lease terminated due to the well's failure to produce in paying quantities. Appellants timely filed this appeal on June 29, 2017. Appellants now raise two assignments of error.

{¶11} Appellants' two assignments of error will be analyzed together.

{¶12} Appellants' first assignment of error states:

THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN FAVOR OF PLAINTIFF-APPELLEE.

{¶13} Appellants' second assignment of error states:

THE TRIAL COURT ERRED IN NOT GRANTING JUDGMENT IN FAVOR OF DEFENDANTS-APPELLANTS.

{¶14} In an action seeking declaratory judgment, legal questions are subject to a de novo standard of review. *Paulus v. Beck Energy Corporation*, 7th Dist. No 16 MO 0008, 2017-Ohio-5716, ¶ 15 citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586. But where the final decision involves factual issues, R.C. 2721.10 provides: "that issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending." *Id.*

{¶15} When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review. *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181 (8th Dist.), citing App.R. 12(C), *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 461 N.E.2d 1273

(1984). Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield,* 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo,* 70 Ohio St.3d at 226, 638 N.E.2d 533 (citing *Seasons Coal Co.,* supra). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. *Id.* In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith,* 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986). "A finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal,* 10 Ohio St.3d at 81, 461 N.E.2d 1273.

**{¶16}** The relevant issue in this case is whether the well was producing in paying quantities. The term "paying quantities" is defined as production of "quantities of oil or gas sufficient to yield a profit, even small, to the lessee over operating expenses, even though the drilling costs, or equipping costs, are not recovered, and even though the undertaking as a whole may thus result in a loss." *Blausey v. Stein*, 61 Ohio St.2d 264, 265-266, 400 N.E.2d 408 (1980). Whether the production is in paying quantities is left to the good faith judgment of the lessee. See *Hupp v. Beck Energy Corp.,* 7th Dist. Nos 12 MO 6, 13 MO 2, 13 MO 3, 13 MO 11, 2014-Ohio-4255, ¶ 102–103. The party who asserts the claim that the well is not producing in paying quantities carries the burden of proof. *Positron Energy Resources, Inc. v. Weckbacher*, 4th Dist. No. 07CA59, 2009-Ohio-1208, ¶ 19, see also *Weisant v. Follett*, 17 Ohio App. 371 (7th Dist. 1922). In a paying quantities analysis, the reviewing court looks to the direct operating costs and excludes any indirect operating costs that do not contribute to the production of oil or gas. *Hogue v. Whitacre*, 7th Dist. No. 16 MO 0015, 2017-Ohio-9377, ¶ 27.

**{¶17}** Appellants raise four issues regarding their assignments of error. The issues will be analyzed separately.

<u>The trial court incorrectly concluded that Whitacre Enterprise's business records established the Well's failure to produce in paying quantities.</u>

<u>Case No. 17 MO 0014</u>

{¶18} Appellants argue that the trial court erred when it classified "operating costs" in Whitacre Enterprises' business records as being the true costs in operating the well. Appellants also argues that the trial court erred when it concluded that no admissible evidence contradicted appellee's interpretation of the business record.

{¶19} In its judgment entry dated May 31, 2017, the trial court ruled that all of Whitacre Enterprises' records kept in the ordinary course of business for the years 2012 through 2015 showed that the well's production was less than the expenses incurred to operate the well. The trial court also ruled that the testimony from Whitacre and Lisa Jones, an employee for Oil Haulers, LLC and Whitacre's daughter, related to indirect expenses was self-serving, irrelevant, and not persuasive.

{¶20} At trial, Whitacre Enterprises' "detail by lease" records for the well were admitted into evidence. (Tr. 37-41, Ex. 10-13). These records show that every month from December of 2011 until August of 2015, the well resulted in a net loss. (Tr. 37-41, Ex. 10-13). The loss from 2012 was $1,854.37, the loss from 2013 was $2,281.73, the loss from 2014 was $2,035.80, and the loss from 2015 was $2,277.38. (Ex. 10-13). The expenses for each of these months include the $300.00 payment Whitacre Enterprises made to Whitacre Store. The only exception is August of 2015 where the payment was $225.00. For each year, this expense is only labeled as "operating."

{¶21} Appellants contend that the $300.00 a month payment should not have been included because appellee did not satisfy his burden to show that this payment reflected the direct costs of operating the well. Whitacre testified that this amount was chosen because "it was simpler just to pay Whitacre Store X number of dollars." (Tr. 141). Whitacre also testified that this amount was based on "the price of oil and gas at the time." (Tr. 154). Similarly, Lisa Jones testified that some of the operating expenses would be unaffected if the well did not exist. (Tr. 102-103).

{¶22} There is no other evidence in the record of exactly what operating costs the $300.00 a month from Whitacre Enterprises to Whitacre Store paid for. The 2012 through 2015 "expenses – original source documents" only identify this $300.00 a month as "operating." (Ex. 17-20). It is also only identified as an "operating" expense in the detail by lease records. (Ex. 10-13).

**{¶23}** Equally important, Whitacre's responses to appellee's requests for admissions were admitted at trial. (Ex. 15). In these responses, Whitacre admitted that "after deducting [the] landowner royalty, revenue from production and sale of oil and gas from the K. Kraynak No. 1 Well did not exceed operating expenses between January 1, 2012 and December 31, 2012." (Tr. 150-151, Ex. 15). Whitacre admitted the same for the years 2013 and 2014. (Ex. 15). Based on all of these exhibits, appellee satisfied his burden and put forth evidence that the well was not producing in paying quantities.

**{¶24}** At trial, there was a factual dispute as to whether the $300.00 a month from Whitacre Enterprises to Whitacre Store constituted a direct or an indirect operating expense. Whitacre's business records were ambiguous and did not itemize the operating expenses the $300.00 paid for. As such, the trial court made a conclusion of fact based on the testimony and exhibits presented at trial that the $300.00 a month constituted a direct operating expense. The only evidence that countered this conclusion was testimony from Whitacre and Jones. In its May 31, 2017 judgment entry, the trial court found this testimony self-serving, irrelevant, and not persuasive.

<u>The trial court errantly based its "Production in Paying Quantities" conclusion on Investment or Tax Profit or Loss.</u>

**{¶25}** Appellants argue that the trial court erred when it relied on investment or tax profits or losses in its paying quantities analysis. Appellants essentially argue that even though the well overall was not profitable, including the working interest owner-investors not seeing a profit, this is irrelevant under a paying quantities analysis as the only thing that matters is whether the operating costs exceed the revenue of the well.

**{¶26}** In its May 31, 2017 judgment entry, the trial court found that the working interest owners of the well each suffered a loss and did not see a profit from their ownership interest in the well during the years 2012 through 2015.

**{¶27}** We do not reach a general conclusion on whether the working interest owners' profits or losses affect a paying quantities analysis. Even if the record lacked any evidence of such profits or losses, there are still multiple pieces of evidence in the record which show that the well's operating expenses exceeded its revenue.

**{¶28}** Whitacre and Jones admitted at trial that the well was not profitable overall. (Tr. 101, 106-112, 153-154). Multiple exhibits at trial also showed that the well's production did not exceed the operating costs. (Ex. 10-13, 17-20). Whitacre even admitted in requests for admissions that the well's operating costs exceeded the well's revenue. (Ex. 15). In short, even if this evidence should not have been considered by the trial court, the trial court still had sufficient evidence to conclude that the well's profits did not exceed its operating costs. Any error by the trial court in considering the working interest owners' profits or losses is harmless error and disregarded pursuant to R.C. 2309.59.

Whitacre Enterprise's Monthly Payments to Whitacre Store are not Operating Expenses

**{¶29}** Appellants argue that the $300.00 a month payment from Whitacre Enterprises to Whitacre Store should not have been considered an operating expense as it was a blanket payment Whitacre Enterprises made to Whitacre Store.

**{¶30}** Appellants make four arguments regarding this issue. First, appellants argue that it was undisputed that the $300.00 a month payment had no relation to the actual costs of production. Appellants point to the testimony of Whitacre to support this argument. (Tr. 141, 154). But Whitacre testified that while this payment was a "catch-all" payment, "some of that $300 represents the direct costs of production[.]" (Tr. 141). Whitacre also testified that the $300.00 per month payment was so Whitacre Store could operate the well. (Tr. 118). Moreover, Whitacre's business records themselves classify this $300.00 a month payment as "operating." (Ex. 10-13, 17-20).

**{¶31}** Second, appellants argue that because Whitacre Store was a third party operator and not the actual lessee, the trial court erred in concluding that the $300.00 a month payment represented operating costs. In response, appellee argues that appellants' argument would allow lessees to outsource all well operations to a third party and claim that the operating costs are zero because they are done by a third party. (Brief of Appellee 15).

**{¶32}** In support of their argument, appellants cite this Court's decision in *Paulus v. Beck Energy Corporation*, 7th Dist. No. 16 MO 0008, 2017-Ohio-5716. Appellants rely on *Paulus* for the notion that Ohio case law emphasizes that the "law is concerned with

the actual costs of operation, not the identity of who incurs those costs." (Brief of Appellants 15). But the portions of *Paulus* appellants cite do not help or hinder their arguments. Specifically, costs associated with the pumping of a well are treated as a direct expense attributable to production of the well, "just as it would have been if an independent contractor performed the service." *Id.* at ¶ 64. But this particular section of *Paulus* was addressing how the lessee artificially deflated its operation expenses and such artificial deflation was appropriate for a court to consider when performing a paying quantities analysis. *Id.* at ¶ 62-64.

{¶33} Third, appellants argue that affirming the trial court would encourage lessees to establish arbitrarily low operating costs in order to perpetually preserve leases. Appellants argue that if the $300.00 a month payment from Whitacre Enterprises to Whitacre Store could be used as evidence in a paying quantities analysis, then people in Whitacre's position could easily create a separate entity to operate the well and pay the operating entity nominal amounts of money or no money at all.

{¶34} This argument does not affect the trial court's paying quantities analysis. The trial court had competent and credible evidence that the $300.00 a month Whitacre Enterprises paid to Whitacre Store was for operating costs associated with the well. Moreover, if a lessee does attempt to artificially deflate its operating costs for purposes of perpetually preserving a lease, it stands to reason that evidence of such deflation will exist as it did in *Paulus*.

{¶35} Fourth, appellants argue that the well was in fact producing in paying quantities for all four years at issue. Appellants argue that the testimony and underlying documents admitted at trial show that the well was producing in paying quantities for the years 2012 through 2015.

{¶36} At trial, Jones testified that she personally reviewed Whitacre Enterprises' records associated with the well. (Tr. 97). Jones also testified that the accounting system used by Whitacre does not distinguish between direct and indirect expenses. (Tr. 109). Jones testified from documents she prepared that the well overall was profitable. (Tr. 110-112). But in a judgment entry dated March 29, 2017, the trial court excluded the exhibits Jones was testifying to on the basis that they were inadmissible

hearsay. One of those excluded exhibits, D-C, purported to illustrate the direct cost of operating the well. (Tr. 98). But appellee objected to this exhibit on the basis that it was prepared either in anticipation of litigation or during litigation and therefore did not constitute a business record pursuant to Evid.R. 803(6). (Tr. 167). Jones testified that this proposed exhibit was prepared after this action was filed. (Tr. 98).

**{¶37}** With several admitted exhibits showing that the well was not profitable while the testimony of Whitacre and Jones was that the well was profitable, there was an issue of fact that needed to be resolved regarding the profitability of the well. The trial court resolved the issue finding that the exhibits at trial showed the well was not profitable and finding the testimony of Whitacre and Jones to be self-serving and not persuasive.

**{¶38}** Furthermore, appellants and appellee agree that the well's revenue from the years 2012 through 2015 were $2,271.57, $1,869.87, $2,138.27, and $866.28 respectively (Brief of Appellants 19, Brief of Appellee 2). Applying only the $300.00 a month payment, which is $3,600.00 per year, the well's expenses surpassed the well's revenue for the years 2012 through 2015.

<u>Koy Whitacre's Reponses to the Requests for Admission Do Not Change the Result</u>

**{¶39}** Appellants argue that Whitacre's admissions that revenue from the well did not exceed the operating costs for the years 2012, through 2014 does not change the fact that the well was still producing in paying quantities. Appellants also argue that Whitacre's admissions do not bind other appellants, specifically Gulfport.

**{¶40}** We do not agree with appellants' argument that Whitacre's responses to the requests for admissions have no effect on the trial. These responses show Whitacre admitted that for the years 2012 through 2014, the well's operating costs did not exceed its revenue. (Ex. 15). In its judgment entry dated May 31, 2017, the trial court noted that these responses conclusively established that the revenue from production and sale of gas from the well did not exceed operating expenses during 2012 through 2014.

**{¶41}** Appellants also argue that Whitacre did not know exactly what he was admitting to when he admitted that the well's operating costs did not exceed its revenue. Whitacre testified at trial that he did not know the legal distinction between direct and

indirect operating costs and therefore included all operating costs. (Tr. 151-152). Additionally, Whitacre denied all requests for admissions which asked him to admit that the well was not producing "in paying quantities" for the relevant years. (Ex. 15).

**{¶42}** Appellee argues that under this Court's decision in *Paulus*, the formula for determining if a well is profitable is income minus operating expenses. *Paulus* at ¶ 68. The requests for admissions that Whitacre admitted state:

> Admit that, after deducting the landowner royalty, revenue from the production and sale of oil and gas from the K. Kraynak #1 Well did not exceed operating expenses between January 1, 2012 and December 31, 2012.

Ex. 15.

**{¶43}** This same request for admission was repeated for the years 2013 and 2014 with Whitacre admitting both of them. (Ex. 15). This is the same formula this Court established in *Paulus*.

**{¶44}** The trial court also found that Whitacre Enterprises' business records for the years 2012 through 2015 showed that the revenue generated from the well was less than the expenses incurred to operate the well. This was shown in several exhibits admitted at trial. (Ex. 10-13, 17-20, 27-30).

**{¶45}** Addressing Whitacre's discovery responses applying to other parties, appellants cite the Tenth District's decision in *Chickey v. Watts*, 10th Dist. No. 04AP-1269, 2005-Ohio-4974. In *Chickey*, the Tenth District held that one party's responses to requests for admissions cannot be binding on another party. See *Id.* at ¶ 24.

**{¶46}** This argument does not have merit for two reasons. First, there is no evidence that the trial court bound other parties to Whitacre's admissions. No such ruling is found in the record. Second, whether Whitacre's admissions are binding on another party is irrelevant to a paying quantities analysis. These admissions were relevant to the sole issue at trial, which was whether the well was producing in paying quantities. After a review of the record, the trial court's judgment that the lease was terminated due to the well's failure to produce in paying quantities is supported by competent and credible evidence.

Case No. 17 MO 0014

{¶47} Accordingly, appellants' first and second assignments of error lack merit and are overruled.

{¶48} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, P. J, concurs
Bartlett, J., concurs

_____

For the reasons stated in the Opinion rendered herein, the two assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**