[Cite as *Kirkner Elec., Inc. v. Rydarowicz*, 2020-Ohio-3362.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## COLUMBIANA COUNTY

### KIRKNER ELECTRIC INC.,

Plaintiff-Appellee,

v.

### JOHN RYDAROWICZ, JENNIFER RYDAROWICZ

Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 19 CO 0041

---

**Civil** Appeal from the
Columbiana County Municipal Court of Columbiana County, Ohio
Case No. 2018 CV F 000420

**BEFORE:**
Gene Donofrio, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Fredric Kannensohn, Atty. Samuel Jordan*, 4531 Belmont Avenue, Suite 2C, Youngstown, Ohio 44505, for Plaintiff-Appellee and

*Atty. Mark Lavelle*, 940 Windham Court, Suite 7, Youngstown, Ohio 44512, for Defendants-Appellants.

Dated:
June 12, 2020

**Donofrio, J.**

{¶1}     Defendants-appellants, John and Jennifer Rydarowicz, appeal from a Columbiana County Municipal Court judgment in favor of plaintiff-appellee, Kirkner Electric, Inc., on appellee's claim for unjust enrichment, following a bench trial.

{¶2}     Appellants began construction of their new home in 2016.  Appellants hired Digger Quality Homes (Digger) to frame the house.  On Digger's recommendation, appellants contacted appellee to handle the electrical work.

{¶3}     In March 2016, appellants met with Brant Griffith.  Griffith has worked as an electrician for appellee for over 18 years and was in charge of this project.  The parties agreed that appellee would do the electrical work for the new home.  But they never entered into a written contract.

{¶4}     According to Griffith, appellant John Rydarowicz initially told him the house was going to be approximately 2,000 square feet.  Griffith estimated the project at $5 per square foot and gave appellants an estimate of $10,000 to complete the electrical work.  When Griffith later went to the site of the new house, after it had been framed, he saw that the house was actually closer to 3,000 square feet.  Griffith then told appellants that the project was going to cost more than the $10,000 he initially quoted them.

{¶5}     According to John, when he and his wife met with Griffith, Griffith told him the price would be $10,000 "give or take."  He stated that Griffith never told him a price per square foot.  John also stated he gave every contractor who worked on his house a set of blueprints, which listed the square footage of the house as 2,912 square feet.

{¶6}     In October 2016, appellee sent appellants the first bill in the amount of $7,452.42.  Appellants paid the first bill in full.  At that point, the project was not yet complete and appellants knew they still owed more for the electrical work.

{¶7}     In March 2017, the project was complete.  Appellee sent appellants the second bill in the amount of $9,633.09.  According to John, they were surprised at the amount appellee said they owed.  John stated that he contacted Griffith, who told him they would work something out.  John further stated that he contacted appellee's owner

who told him to pay what he thought was fair.  Appellants made payments of $2,500 and $3,000 on the second bill.

{¶8}    Appellee then filed a complaint against appellants asserting a claim for unjust enrichment and seeking judgment in the amount of $4,133.09, the balance remaining on the second bill, plus interest.

{¶9}    The matter proceeded to a bench trial where the court heard testimony from Griffith, John, and Jenna.  The court found that appellee competently performed the electrical work and billed appellants in accordance with industry standards.  The court determined it would be unjust to permit appellant to benefit from the work without payment.  Therefore, the court awarded judgment in favor of appellee in the amount of $4,133.09 with interest.

{¶10}   Appellants filed a timely notice of appeal on October 15, 2019.  They now raise a single assignment of error for this court's review.

{¶11}   Appellants' assignment of error states:

THE TRIAL COURT ERRED IN FINDING THE MANIFEST WEIGHT OF PLAINTIFF-APPELLEES [sic.] EVIDENCE PROVED ALL THE ELEMENTS OF UNJUST ENRICHMENT.

{¶12}   Appellants agree that appellee conferred a benefit on them and that they knew of the benefit.  But they argue that the trial court's finding that it would be unjust for them not to make an additional $4,133.09 payment to appellee was against the manifest weight of the evidence.  Appellants contend the court accepted Griffith's testimony as truthful and disregarded John's testimony.  They assert the court accepted John's testimony that the work was completed as expected but that it disregarded John's testimony that appellee's owner told him to pay what was fair.  Moreover, appellants argue the trial court rewarded appellee for "sloppy business practices" by awarding it a 70-percent increase beyond the initial quote when there was no written contract for the job.

{¶13}   When reviewing civil appeals from bench trials, an appellate court applies a manifest weight standard of review.  *Revilo Tyluka, L.L.C. v. Simon Roofing & Sheet Metal Corp.*, 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181 (8th Dist.), citing App.R. 12(C), *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984).

Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226 (citing *Seasons Coal Co.*, supra). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. *Id.* In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986).

{¶14} We must examine the evidence presented at trial in examining whether the trial court's judgment was against the manifest weight of the evidence.

{¶15} Griffith was appellee's sole witness. Griffith testified that he first met with appellants in March 2016. (Tr. 9). He stated that there was no general contractor on the job. (Tr. 10). Instead, he simply met with appellants and they told him what they wanted in their new home. (Tr. 10). Griffith guesstimated that he met with appellants on three occasions before he started work at their new house. (Tr. 11). Griffith testified that he never saw a set of plans for the house during these meetings. (Tr. 11).

{¶16} Griffith testified that the parties never entered into a written contract. (Tr. 12). He stated that appellants told him the house was going to be 2,000 square feet. (Tr. 12). Believing the house would be approximately 2,000 square feet, Griffith estimated a cost of $10,000 to $12,000 based on $5 per square foot. (Tr. 12, 29).

{¶17} Griffith stated that he realized the house was more than 2,000 square feet when he went to the house to start the "rough in." (Tr. 14). This occurred in June 2016. (Tr. 15). At that point, Griffith stated he told appellants the project was going to cost more than he had originally quoted but he did not tell them how much more at that time. (Tr. 15, 30). He stated that appellants did not voice any complaints to him at that time. (Tr. 17).

{¶18} Griffith testified that $5 per square foot was an industry average for Mahoning and Columbiana County at that time for this type of electrical work. (Tr. 31).

**{¶19}** As to the money paid to appellee, Griffith testified that appellee sent appellants a bill in September 2016, for $7,452 after the "rough in" was complete, which appellants paid in full.  (Tr. 17; Ex. A). Appellee sent appellants a second bill in March 2017, after the entire job was complete for $9,633.09.  (Tr. 17; Ex. A). Appellants paid $2,500 toward the second bill in July 2017 and another $3,000 toward the second bill in September 2017.  (Tr. 17; Ex. A). Griffith stated there still remained a balance of $4,133.09, which appellants have not paid.  (Tr. 17; Ex A).

**{¶20}** Griffith also testified regarding Exhibit E, which included copies of the work cards for the three electricians who worked on appellants' house.  The work cards reflected 289 total hours worked. (Tr. 19-20; Ex. E).  And Griffith testified as to Exhibits F and G, which were invoices from YESCO and receipts from Home Depot for materials for the project.  (Tr. 21-22; Ex. F, G).  Finally, he testified that the standard markup on supplies is 15 percent.  (Tr. 22-23).

**{¶21}** Next, John testified for appellants.  John stated that he and Jenna were the general contractors for their new house.  (Tr. 35-36).  They contacted appellee to do the electrical work based on a referral from a contractor they had hired to frame the house.  (Tr. 36).  John stated that they met with Griffith and Griffith told them the project would cost $10,000 "give or take."  (Tr. 38).  John testified that was the only time the parties discussed the price before the final bill.  (Tr. 38).  He stated that the original plans were never modified.  (Tr. 38).  He stated that he gave every contractor a set of plans that showed the house was to be 2,912 square feet.  (Tr. 46-47).  John testified that Griffith never gave him a specific price per square foot and never told him there was a 15 percent markup on supplies.  (Tr. 39).

**{¶22}**  John testified that when he received the first bill for $7,452, he paid it.  (Tr. 39).  He believed the first bill was for the "roughing" and he knew that there would still be another bill when the project was completed.  (Tr. 40).  When he received the second bill for $9,633.09, however, he was surprised by the amount.  (Tr. 40).  John testified that he contacted Griffith, who told him they would work something out.  (Tr. 40).  Several months later, John stated that he spoke with appellee's owner who told him to pay what he thought was fair.  (Tr. 41).  John stated that after they paid $5,500 toward the second bill, he thought the matter was settled.  (Tr. 41).

**{¶23}** Finally, John testified that he was not taking issue with the quality of the work or the number of hours worked. (Tr. 47).

**{¶24}** Jenna also testified. She stated the only time Griffith ever mentioned that the project would cost more than $10,000 was when they were walking through the house and she informed him of where she wanted lights located and he told her it would be "a little more than" $10,000. (Tr. 50).

**{¶25}** Unjust enrichment exists when the plaintiff demonstrates: (1) a benefit to the defendant conferred by the plaintiff; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment. *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

**{¶26}** In this case, appellants concede that elements one and two were met. They agree that appellee conferred a benefit on them and they knew of the benefit. Furthermore, appellants do not take issue with the quality of appellee's work or the number of hours it took to complete the project.

**{¶27}** The only issue then is whether there is competent, credible evidence supporting the trial court's finding that retention of the benefit by appellants without payment of the remainder of the bill would be unjust.

**{¶28}** Appellants' argument here is that the trial court erred in believing Griffith's testimony in full and not believing all of John's testimony. But the trier of fact is free to believe all, part, or none of each witnesses' testimony. *State v. Matthews*, 7th Dist. Mahoning No. 08-MA-49, 2009-Ohio-3254, ¶ 55, citing *State v. Nichols*, 85 Ohio App.3d 65, 76, 619 N.E.2d 80 (4th Dist.1993). Thus, it was up to the trial court, as the finder of fact, to determine whether Griffith's and John's testimonies were accurate as to each of the matters they testified to.

**{¶29}** Griffith testified that the $10,000 price he quoted appellants was based on appellants' representation that their new house was to be 2,000 square feet. He further testified that once he learned that the house was actually almost 3,000 square feet, he told appellants the price was going to increase. Appellee then billed appellants in accordance with industry standards for the amount of hours worked.

Case No. 19 CO 0041

**{¶30}** Because Griffith's testimony supports the trial court's judgment, the court's judgment is not against the manifest weight of the evidence. We are to give every reasonable presumption in favor of the trial court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226 (citing *Seasons Coal Co.*, supra). In conducting a manifest weight of the evidence review in a civil case, "[a] finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal*, 10 Ohio St.3d at 81. Thus, even if this court may have reached a different conclusion, we could not reverse on that basis.

**{¶31}** Accordingly, appellants' sole assignment of error is without merit and is overruled.

**{¶32}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, P. J., concurs.
Robb, J., concurs.

Case No. 19 CO 0041

---

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Columbiana County Municipal Court of Columbiana County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**